# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CINDY WENGERD, *et al.*, | : | Case No. 3:15-cv-293 |
| | : | |
| Plaintiffs, | : | District Judge Thomas M. Rose |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| SELF-RELIANCE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Cindy Wengerd and Plaintiff Sarah Walker, on behalf of themselves and all other similarly situated individuals (Plaintiffs), bring this case asserting that Defendant failed to pay overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.,* the Ohio Wage Act, O.R.C. §§ 4111.01, 4111.03, and 4111.10, and the Prompt Payment Act, O.R.C. § 4113.06(A), (B).

This case is before the Court upon Defendant's Motion for Judgment on the Pleadings (Doc. #16), Plaintiffs' Opposition (Doc. #31), Defendant's Reply Memorandum (Doc. #32), and the record as a whole.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. BACKGROUND

Defendant is an Ohio corporation that "provides in-home family supports for children and adults with challenging behaviors, developmental disabilities, and other disabilities in Ohio…." (Doc. #1, *PageID* #3). Plaintiff Wengerd was employed by Defendant as "Direct Care Staff" from approximately October 2009 to March 2015, and Plaintiff Walker was employed by Defendant as "Direct Care Staff" from approximately December 2014 to March 2015. *Id.* at 2.

On August 25, 2015, Plaintiffs filed a complaint against Defendant. (Doc. #1). On April 1, 2016, after the deadline for amending pleadings passed, Defendant filed a Motion for Judgment on the Pleading. (Doc. #16). Shortly thereafter, on April 25, 2016, Plaintiffs filed an Amended Complaint. (Doc. #19). On May 12, 2016, Defendant filed a Motion to Strike Plaintiffs' Amended Complaint (Doc. #24), and this Court granted Defendant's Motion and ordered Plaintiff to respond to Defendant's Motion for Judgment on the Pleadings. (Doc. #29). In addition, this Court ordered Plaintiffs to "address why an amended complaint would not be futile and include a proposed amended complaint." *Id.* On July 21, 2016, Plaintiffs filed a response with a proposed amended complaint, and on August 8, 2016, Defendant filed a reply. (Doc. #s 31, 32).

## III. STANDARD OF REVIEW

A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991); *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted) ("The standard of review

for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

"In reviewing the motion, [the Court] must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (citing *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir. 2001)).

**IV.   ANALYSIS**

Defendant asserts that Plaintiffs fail to state a claim upon which relief can be granted because Defendant is exempt from the FLSA's overtime protections under the "companionship services exception." (Doc. #16, *PageID* #106). Defendant further contends that because Plaintiffs' individual claims fail, their collective action must also be dismissed. *Id.* at 113. Defendant also asserts that the remaining state claims should be dismissed for lack of subject matter jurisdiction and because the Ohio overtime requirement is also subject to the companionship exception. *Id.* at 114-15. Last, Defendant argues Plaintiffs should not be permitted to file an amended complaint because it is futile, untimely, and prejudicial to Defendant. (Doc. #32, *PageID* #265).

Plaintiffs maintain that they have pleaded enough facts to show that they were not "domestic service employees" and the companionship services exception does not apply. (Doc. #31, *PageID* #227).  Plaintiffs also assert that their proposed amended complaint is not futile and they should be permitted to file it.  *Id.* at 231.

### a. "Companionship Services Exception"

Under the FLSA, an employee who works more than forty hours in a workweek must receive overtime compensation "at a rate of not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(2).  However, this overtime provision does not apply to "an employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves…."  29 U.S.C. § 213(a)(15).  During Plaintiffs' employment, the Regulations defined "companionship services" broadly:

> [T]he term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided, however*, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.

29 C.F.R. § 552.6.[2]

---

[2] The Department of Labor proposed changes to 29 C.F.R. §§ 552.109, 552.6 to be effective January 1, 2015.  The proposed changes were challenged in federal court, and the District Court vacated the revised regulations.  *See Home Care Ass'n of Am. v. Weil*, 76 F.Supp.3d 138 (D.D.C. 2014); *Home Care Ass'n of Am. v. Weil*, 78 F.Supp.3d 123 (D.D.C. 2015).  The District of Columbia Circuit Court of Appeals subsequently reversed the district court's judgments.  *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1096 (D.C. Cir. 2015), *cert. denied*, 136 S.Ct. 2506 (2016).  As a result, the effective date was pushed

The Department of Labor issued an opinion letter in March 1995 to clarify the distinction between "household work related to the care of the aged or infirm person" and "general household work:"

> [I]t is our opinion that such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purpose of section 13(a)(15) of the FLSA. However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation.

Opinion Letter FLSA, 1995 WL 1032475, at *1 (Dep't of Labor March 16, 1995).

"[A]n employee who brings a suit under the FLSA for unpaid wages or unpaid overtime compensation 'has the burden of proving that he performed work for which he was not properly compensated." *Foster v. Americare Healthcare Servs.,* 150 F.Supp.3d 686, 877 (S.D. Ohio 2015) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a)).  However, "[e]xemptions from the FLSA's minimum wage and overtime coverage… are to be narrowly construed against employers." *Salyer,* 83 F.3d at 786.  Additionally, the "exemptions set forth in 29 U.S.C. § 213 are affirmative defenses that defendants must prove." *Hopkins v. Chartrand*, 566 F. App'x 445, 448 (6th Cir.

---

back to November 12, 2015. *We Count on Home Care,* U.S. DEP'T OF LABOR https://www.dol.gov/whd/homecare/litigation.htm (last visited Sept. 27, 2016).  Both named Plaintiffs terminated their employment with Defendant prior to the new effective date.  Further, both Plaintiffs and Defendant cite solely to the previous version.  Thus, the versions of the Regulations effective during Plaintiffs' employment apply in this case.

2014) (citing *Franklin v. Kellogg Co.,* 619 F.3d 604, 611 (6th Cir. 2010)). Although Defendant bears the burden of proof, "[a] complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law." *Gorman v. Chicago,* 777 F.3d 885, 889 (7th Cir. 2015) (citations omitted); *see Cheatom v. Quicken Loans,* 587 F.App'x. 276, 279 (6th Cir. 2014) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010), *cert. denied,* 562 U.S. 841, 131 S.Ct. 220, 178 L.Ed.2d 47 (2010)) ("A motion to dismiss will be granted only if 'the alleged facts do not set forth an adequate claim or if the face of the complaint demonstrates that relief is barred by an affirmative defense.'").

Defendant contends that Plaintiffs' employment was exempt from the FLSA's overtime provisions because Plaintiffs provided companionship services. Plaintiffs assert that they have pleaded enough facts to show that they performed general household work more than twenty percent of the time. Specifically, Plaintiffs allege,

> The primary job duty of Self-Reliance's Direct Care Staff is to provide in-home domestic services to Self-Reliance clients, including, but not limited to: meal preparation and service; administering medications; cleaning the kitchen and other rooms; making beds; washing clothes; washing dishes; mopping/vacuuming floors; dusting; taking out trash; personal hygiene care; dressing; and grooming.

(Doc. #1, PageID #3), (Doc. #31-1, PageID #238).

Generally, most of these activities fall under the definition of companionship services. Administering medication, personal hygiene care, dressing, grooming, meal preparation, making beds, and washing clothes are specifically exempt under the definition of companionship services. 29 C.F.R. § 552.6; *see Salyer,* 83 F.3d at 787

6

(finding that helping her husband dress, giving him medication, helping him bathe, assisting him in getting around their house, and cleaning his bedclothes "fall squarely within the plain language of the statutory definition of 'companionship services'…."); *Jones v. Elect Home Care, LLC,* 2015 WL 7709425, at *3 (W.D. Tenn. July 1, 2016) (Nursing assistant doing "household laundry, ironing, trash removal, washing dishes, sweeping, mopping, dusting, etc. – also fall[s] within the companionship exemption."); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.,* 2009 WL 1086935, at *3-4 (E.D. NY April 22, 2009) (finding that cleaning the clients' house; preparing meals and cooking; bathing the patient; doing laundry; running errands for the patient; and making and changing the bed "constitute household work related to the care of the client…."). In addition, the Department of Labor's opinion exempts cleaning the kitchen, bedroom, and bathroom. Opinion Letter FLSA, 1995 WL 1032475, at *1.

However, Plaintiffs further allege, "Self-Reliance also assigned job duties to Plaintiff that included providing similar services to non-clients who owned, resided, or visited in client homes." (Doc. #31-1, *PageID* #239). Notably, the listed activities are *not* "household work related to the care of the client" if the activity is performed for anyone other than the client. *See Anglin v. Maxim Healthcare Servs., Inc.,* 2009 WL 2473685, at *7 (M.D. Fl. Aug. 11, 2009) (citing 29 C.F.R. §§ 552.6, 552.106) ("[T]he plain language of the regulations mandate that in calculating 'general household work," the Court confirm[s] such work 'does not exceed 20 percent of the total weekly hours worked' and is 'not generally' performed 'for other persons.'"). For example, making a client's bed is related to the care of the client, but making a visitor's bed is likely

7

general household work.

In Plaintiffs' proposed amended complaint, they elaborated on their job duties:

> While working for Self-Reliance, Wengard was required to clean and maintain the home by spending more than 20% of her time: sweeping and mopping the kitchen and bathroom floors; wiping down bedroom walls; changing sheets; washing the bathroom curtains; repeatedly wash[ing] sheets as food items were spilled on them when client was fed; sweep[ing] the basement stairs and floors; and clean[ing] toilets. This work was performed for the benefit of the owner of the home, visitors, other employees, the assigned patient, and for anyone else that was assigned to live at the home. Even though most of the time Wengard worked at the home there was only one patient living at that address, she was required to keep the basement, other bedrooms, and the rest of the house in a clean condition. This work only benefited the group home's owner and not the patient directly because the patient only occupied one bedroom in the home.

(Doc. #31-1, *PageID* #240).

Some of these activities fall under companionship services. Cleaning the kitchen, including sweeping and mopping the floor, is related to the care of the patient, and is likely exempt. Opinion Letter FLSA, 1995 WL 1032475, at *1. Wiping down the client's bedroom walls; changing the client's sheets; and repeatedly washing the client's sheets as food items were spilled on them when the client was fed are all parts of cleaning the client's bedroom and are also likely exempt. *Id.* Further, cleaning the bathroom used by the client, including sweeping and mopping the bathroom floor; washing the bathroom curtains; and cleaning the toilet, is likely exempt. *Id.*

However, some of these activities fall under "general household work."

8

Sweeping the basement stairs and floors and keeping the rest of the house in a clean condition are likely general household work. Further, wiping down walls in the bedrooms not used by the client, sweeping and mopping bathrooms not used by the client, and cleaning toilets not used by their client are likely unrelated to the care of the client. Finally, although cleaning the kitchen and client's bathroom can be related to the client's care, if visitors or other residents use either, then cleaning them could also fall under general household work. Plaintiffs allege the "work was performed for the benefit of the owner of the home, visitors, other employees, the assigned patient, and for anyone else that was assigned to live at the home." Taken together and construing the complaint in the light most favorable to Plaintiffs, these activities could reasonably take more than twenty percent of Plaintiffs' time.

As noted previously, exemptions from FLSA's overtime coverage must be narrowly construed and employers bear the burden of showing that the exemption applies. Drawing all reasonable inferences in Plaintiff's favor, at this time, Defendant has not shown that the exemption applies, and Plaintiffs have not "plead[ed] [them]selves out of court…." *Gorman,* 777 F.3d at 889. Therefore, Plaintiffs' allegations, taken as true, are sufficient to plausibly claim that they performed "general household work" more than twenty percent of the time.

### a. "Domestic Service Employees"

Plaintiffs also contend that the companionship services exception does not apply because they are not "domestic service employees." The companionship services

exception requires the employee to be "employed in domestic service employment…." 29 U.S.C. § 213(a)(15).

> [T]he term domestic service employment refers to services of a household nature performed by an employee in or about a *private home* (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3 (effective until Jan. 1, 2015) (emphasis added). The Department of Labor explains that a private home can be "a fixed place of abode or a temporary dwelling as in the case of an individual or family traveling on vacation." 29 C.F.R. § 552.101 (effective until Jan. 1, 2015). In addition, "[a] separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel may constitute a private home." *Id.*

Courts have considered many factors to determine whether a living arrangement is a "private home," an institution, or a business enterprise. The Tenth Circuit Court of Appeals outlined six factors: (1) "whether the client lived in the living unit as his or her private home before beginning to receive the services[;]" (2) "who owns the living unit[;]" (3) "who manages and maintains the residence[;]" (4) "whether the client would be allowed to live in the unit if the client were not contracting with the provider for services[;]" (5) "the relative difference in the cost/value of the services provided and the total cost of maintaining the living unit (including government subsidies)[;]" and (6) "whether the service provider uses any part of the residence for the provider's own

10

business purposes." *Welding v. Bios Corp.*, 353 F.3d 1214, 1219-20 (10th Cir. 2004) (citations omitted).

Other factors include: "(1) [the residence's] source of funding; (2) access to the facility by the general public; (3) whether it is organized for profit or is a nonprofit organization; and (4) the size of the organization." *Terwilliger v. Home of Hope, Inc.,* 21 F.Supp.2d 1294, 1299 (N.D. Okla. 1998) (citing *Bowler v. Deseret Village Assoc.,* 922 P.2d 8, 13–14 (Utah 1996)).

Notably, courts addressing whether a residence is a private home generally have more information about the client's residence, as this issue is often addressed at summary judgment. *See Gay,* 102 F.Supp.2d at 454 (Court relied on testimony from depositions to decide motion for summary judgment.); *Lott v. Rigby,* 746 F.Supp. 1084 (N.D. Ga. 1990) (Court found plaintiffs were not employed in a private home and granted, in part, plaintiffs' motion for summary judgment); *Murray v. Mary Glynn Homes, Inc.,* 2013 WL 4054595 (N.D. Ohio Aug. 12, 2013) (Court denied defendants' motion for summary judgment, finding disputed issues of fact when addressing factors); *Terwilliger,* 21 F.Supp.2d at 1299 (Court addressed issue of private homes in decision on a motion for summary judgment). As a result, these courts were able to address several of the factors in great detail. In the present case, there is significantly less detail.

Plaintiffs assert that they were not engaged in "domestic service employment" because they were not employed in a private home. (Doc. #31, *PageID* #s 227-29). In Plaintiffs' original complaint, there is nothing to suggest that Plaintiffs worked in anything but private homes. In fact, Plaintiffs specifically allege that "[t]he primary job

11

duty of Self-Reliance's Direct Care Staff is to provide in-home *domestic services* to Self-Reliance clients…." (Doc. #1, *PageID* #3); (Doc. #31-1, *PageID* #238) (emphasis added). However, in their proposed amended complaint, Plaintiffs allege that Plaintiffs Wengerd and Walker both worked in a three-bedroom group home owned by a "charitable organization that provides housing to the disabled." (Doc. #31-1, *PageID* #s 239-40). They further allege that the patient occupied one bedroom in the house, the patient did not maintain the home, and the owner of the home "contracted out for maintenance of the home, including lawn and garden services." *Id.*

The complaint and proposed amended complaint do not address many of the factors considered by other courts. It is not clear from the record whether the client lived in the home before services began, whether the client will be able to remain in the unit if services from Defendant stop, the difference in cost/value of the services provided and the total cost of maintaining the living unit. In addition, the source of the residence's funding and the size of the organization is unclear. There is no indication that Defendant uses part of the residence for business purposes or that the home is open to the general public.

However, there are several facts alleged by Plaintiffs related to whether the residence is a "private home." Plaintiffs allege that the home is owned and managed by a charitable organization. In addition, the charitable organization contracted out for maintenance of the home, including lawn and garden services. The patient did not maintain the home. Plaintiffs further allege that their work benefits "anyone else that was assigned to live at the home." (Doc. #31-1, *PageID* #240). This implies that the client

12

did not have control over who resided at the house.  To some extent, Plaintiffs also helped in the maintenance of the home.  Specifically, Plaintiffs clean portions of the house, such as the basement, that are not used by the patient.  These facts, taken as true, show that the patient lacked some control over the home and are sufficient to raise a reasonable inference that the residence was not a private home.

Therefore, Plaintiffs have pleaded sufficient facts to support their claim that the companionship services exemption does not apply to their employment because they are not "domestic service employees."

### b. Collective Action

Defendant argues that Plaintiffs' collective allegations must be rejected because Plaintiffs' individual claims fail.  (Doc. #16, *PageID* #113).  Defendant's argument lacks merit.  At this time, Plaintiffs' individual claims survive, and thus, Plaintiffs' collective action claims should not be dismissed.[3]

### c. State Claims

Defendant asserts that "because this Court should dismiss Count I of the Complaint, this Court should also dismiss the entire Complaint for lack of subject matter jurisdiction."  (Doc. #16, *PageID* #114).  In addition, Defendant contends that the state law claims "should be dismissed for the same reasons that the FLSA claims asserted in Count I should be dismissed."  *Id.* at 115.  Defendant's argument lacks merit.  Because

---

[3] Plaintiffs' Motion to Conditionally Certify Collective Action (Doc. #14) is currently pending before U.S. District Court Judge Thomas M. Rose.  The undersigned judicial officer intends no comment regarding whether Plaintiffs' collective action claims have or lack merit.

Plaintiffs' individual claims survive, Plaintiffs' state law claims should not be dismissed at this time.

### d. Amended Complaint

As directed by the undersigned judicial officer, Plaintiffs' Response in Opposition (Doc. #31) addressed why an amended complaint would not be futile and included a proposed amended complaint (Doc. #31-1). Plaintiffs assert that the proposed amended complaint is not futile because it "shows the FLSA's companionship exemption does not apply… because [Plaintiffs' work] was not performed in a private residence and, alternatively, their heavy cleaning exceeded the 20% exemption test, meaning that they are entitled to overtime under the facts alleged in the [proposed amended complaint]. (Doc. #31, *PageID* #233). Defendant contends that Plaintiffs' proposed amended complaint "is untimely, has caused undue prejudice to Self-Reliance, and is futile." (Doc. #32, *PageID* #257).

Under the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). "A proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

For the reasons explained above, and based on the new facts alleged in Plaintiffs' proposed amended complaint, Plaintiffs' claims survive Defendant's Motion for Judgment on the Pleadings. Therefore, Plaintiffs' proposed amended complaint is not futile.

Although discovery and identification of lay witness is due by October 1, 2016, Plaintiffs' proposed amended complaint is not unduly prejudicial to Defendant.

> In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

*Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) (citing *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir. 1986).

In the present case, there is no indication that Defendant would be required to expend significant additional resources to conduct discovery. According to Defendant, "Plaintiff provided care to *only one* client in a small home where no other individuals lived and the client attended a program outside the home during the weekdays." (Doc. #16, *PageID* #110, n.3) (emphasis added). Defendant also provides additional information about the residence in its Reply. For example, Defendant claims that the general public does not have access to the home, the charitable organization acts as a landlord, and Defendant has no control over the residence. (Doc. #32, *PageID* #s 263-

15

64). Based on this information and a lack of indication that Plaintiffs' proposed amended complaint would require Defendant to expend significant additional resources, Defendant will not be unduly prejudiced by Plaintiffs' proposed amended complaint.[4]

There is no evidence of undue delay, bad faith or dilatory motive, or repeated failure to cure deficiencies. Thus, Plaintiffs may amend their complaint.[5]

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion for Judgment on the Pleading (Doc. #16) be DENIED; and

2. The Clerk of Court be directed to file Plaintiffs' Proposed Amended Complaint (Doc. #31-1).

Date: October 3, 2016

*s/Sharon L. Ovington*
Sharon L. Ovington
Chief United States Magistrate Judge

---

[4] This conclusion is buttressed by Defendant's statement that the documents it has initially produced to Plaintiffs "demonstrate that there is no evidence that either Plaintiff ever exceeded the 20% threshold for general household work." (Doc. #16, *PageID* #110, n.3). In light of this, Defendant's cost of discovery and prejudice is reduced, at least somewhat, by the probative value of the documents it already has in its possession.

[5] Defendant may motion U.S. District Judge Thomas M. Rose for an extension of time to identify lay witnesses and conduct discovery.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).